## Bowser v. First National Bank of Claysburg.

*Banks and banking—Safe-deposit boxes—Bailment—Theft from box—Liability of bank—Negligence—Proof.*

1. The relation between a bank that rents safe-deposit boxes and one who places securities in such a box for safekeeping is that of bailor and bailee.

2. Proof that securities so deposited for safekeeping were lost by reason of a theft committed by burglary in such bank does not in itself establish negligence on the part of the bank.

3. If the loss is shown to have been by theft, the burden of proof is upon the plaintiff to show that the theft was occasioned or was not prevented by reason of some negligence or omission of due care on the part of the bank.

Motions for new trial and for judgment *n. o. v.* C. P. Blair Co., Oct. T., 1922, No. 247.

*Marion D. Patterson*, for plaintiff; *Robert W. Smith*, for defendant.

SEARLE, P. J., 22nd judicial district, specially presiding, June 28, 1924.—The defendant is a national bank doing a general banking business in the village of Claysburg, Blair County, Pennsylvania. The plaintiff is a resident of said village, and it appears from the evidence that he had been a customer of the defendant bank for a period of six years. He rented from the defendant a safe-deposit box at an annual rental of $1.50 per year, and had paid two annual rentals thereon, and placed therein certain securities of the value of $700.

On the night of Dec. 9, 1921, the bank was entered by burglars and the iron safe containing the safe-deposit boxes was broken open and the plaintiff's securities, together with the securities of other renters of said boxes, were stolen. Plaintiff brought this action to recover the value of said securities and obtained a verdict on May 23, 1923, in his favor in the sum of $717.50. Defendant thereupon moved the court for a new trial and for judgment *n. o. v.*, which said motions are now before the court for disposition.

There is some variance in the opinions of the courts and text-writers as to the relation existing between the lessor and lessee of safe-deposit boxes under conditions similar to those in this case, some holding that the relation existing

between them is that of lessor and lessee, and others, in the best considered cases, that the transaction is a bailment and that the relation between the lessor and lessee of boxes is that of bailor and bailee.

In National Safe Deposit Co. *v.* Stead, 250 Ill. 584, it was said by the court: "We think it clear that where a safety-deposit company leases a safety-deposit box or safe and the lessee takes possession of the box or safe and places therein his securities or other valuables, the relation of bailee and bailor is created between the parties to the transaction as to such securities or other valuables, and that the fact that the safety-deposit company does not know, and that it is not expected that it shall know, the character or description of the property which is deposited in such safety-deposit box or safe, does not change that relation, any more than the relation of a bailee who should receive for safekeeping a trunk from a bailor would be charged by reason of the fact that the trunk was locked and the key retained by the bailor, although the obligation resting upon the bailee with reference to the care he should bestow upon the property in the trunk might depend upon his knowledge of the contents of the trunk. Obviously, the bailee would be in possession of the trunk and its contents, and no amount of argument would demonstrate that while the trunk was in possession of the bailee its contents were in the possession of the bailor, solely by reason of the fact that the bailor of the trunk retained the key and the bailee did not have access to the trunk. We are of the opinion that the relation of bailee and bailor exists between the appellant and its lessees, and that the deposit of the securities and valuables by its lessees in rented safety-deposit boxes or safes is a bailment, and that the law applicable to bailments generally applies to such transaction and to such property."

See, also, Reading Trust Co. *v.* Thompson, 254 Pa. 333, and cases cited by Judge Walling in his opinion; also Pittsburgh Safe Deposit Co. *v.* Pollock, 85 Pa. 391.

We are clearly of the opinion that the relation between the parties in this case was that of bailor and bailee, but whether the relation was that of bailor and bailee or lessor and lessee, the defendant's duty and liability were the same. See Jones *v.* Morgan, 90 N. Y. 4. In either case, the defendant was bound to exercise ordinary care and prudence in guarding the property under its custody.

Having decided that the relation existing between the lessor and lessee of a safety-deposit box, as in the case before us, is that of bailor and bailee, and that the duty owing by the bailee to the bailor in such cases is that he shall, in guarding and safekeeping the contents of the lessee's box, exercise ordinary care and diligence, the inquiry will be made as to the burden of proof, that is, upon whom such burden rests.

In Van Tile on Bailments, § 204, it is said: "The question as to the burden of proof seems to be settled in the opinion of the court in the case of Claflin *v.* Meyer, 75 N. Y. 260, which held that where there is a failure to account for the property or its injury and a demand and an unexplained refusal to deliver is proven, a *prima facie* case of negligence is made out, but when the loss or injury is accounted for as having been occasioned by some of the causes that excuse the bailee, then the defence is complete, unless the plaintiff further shows that the bailee by exercising ordinary diligence might have avoided the loss or injury; that the burden of proving negligence never shifts from the plaintiff. In that case the goods were lost by a burglary. The court says: 'Upon its appearing that the goods were lost by a burglary committed upon the defendant's warehouse, it was for the plaintiffs to establish affirmatively

that such burglary was occasioned or was not prevented by reason of some negligence or omission of due care on the part of the warehouseman.' "

The plaintiff must, in all cases suing for loss of goods, allege negligence and prove negligence. This burden is never shifted. If he proves the demand and the refusal to deliver, these facts make out a *prima facie* evidence of negligence; but if, in the course of plaintiff's proof or that of the defendant, it appears that the goods have been lost by theft, the evidence must show that the loss arose from the negligence of the lessee or bailee.

Plaintiff in his statement, in paragraphs 4 and 5, sets forth the following causes of negligence upon the part of the defendant:

"4. That the defendant was negligent, in that it did not exercise the same care of plaintiff's said securities as it did of the securities and property belonging to the bank; that it kept the bank securities and other property belonging to the bank in a burglar-proof steel safe, and that the property of plaintiff was kept in a tin box in the bank vault, unprotected from burglars, except by a three-fourth inch steel door with a combination lock, and the said vault was easily accessible to burglars equipped with an acetylene burner.

"5. That on Dec. 9, 1921, the said defendant bank's building was burglarized, and as a result of the inadequate protection afforded by the vault and tin box aforesaid containing plaintiff's said securities, and as a result also of the negligence of defendant in failing to place securities in the burglarproof steel safe aforesaid, and of defendant's failure to use due and proper care for the safeguarding of plaintiff's said property, said securities were stolen from said bank vault by burglars, who burned a hole through the said three-fourth inch steel door by means of an acetylene burner and removed the combination lock therefrom and then opened the door, and the said tin box containing plaintiff's said securities was easily accessible by prying the same open with a steel tool."

At the close of plaintiff's testimony, defendant moved for a compulsory nonsuit. This was refused, on the ground that a bailment having been shown and a failure to redeliver, a *prima facie* case of negligence was made out for the plaintiff.

Under the circumstances of this case, we then fell into error (a) because of the allegation in plaintiff's statement of burglary and negligence of defendant in connection therewith; (b) because the evidence offered by plaintiff before resting his case showed that a burglary had been committed. On page 5 of the testimony, D. E. Brumbaugh, a witness called as on cross-examination, testified: "Q. When the burglars opened the vault, they didn't disturb the safe? A. No. Q. And your securities were secure from the burglars that night by being in the safe? A. Yes, except some loose change that wasn't in the safe. Q. And these fifty metal boxes contained the securities of your patrons and none of the bank's? A. Yes, that's right. Q. And when the burglars came it was the securities in these metal boxes that were taken and not your property? A. That's right, except some coins that were not in the safe."

(c) And because of this testimony, plaintiff had not made out a *prima facie* case. Negligence alleged could not be presumed, and plaintiff had not offered sufficient evidence to show that the alleged burglary was made possible by the negligence of the defendant.

Nor do we think that the burden of proving negligence alleged was established by the cross-examination of defendant's witnesses.

This case was entitled an "action in *assumpsit*," but plaintiff's statement shows an action of trespass, and in this case the question of contributory neg-

ligence of plaintiff arises, and one of the questions to be determined by the jury is whether the defendant exercised, under all the evidence, the care and diligence required by a man of ordinary prudence, the lack of which was upon the plaintiff to prove.

The questions involved have not frequently arisen in the courts of this State, and in order to have a verdict rendered upon proper and sufficient evidence and governed by the law herein set forth, we are satisfied that both parties are entitled to a new trial.

Now, June 28, 1924, motion for judgment n. o. v. on the part of the defendant is dismissed and exception is noted to our action in this respect and bill sealed, and the rule for new trial, obtained by the defendant, is made absolute and new trial is granted.