ERASTUS A. WILLIAMS, as Executor of the Last Will and Testament of Dan Williams, Deceased, Respondent, v. MRS. BETSA CLARK, Appellant.

(172 N. W. 825.)

**Wills — action to determine adverse claims to a certain note — mortgage and assignment of decedent's property.**

1. In an action to determine title and adverse claim to a certain note, mortgage, and assignment between Erastus A. Williams, who claimed title thereto as sole devisee in the will of his brother, Daniel, to whom the note was payable and who during his lifetime was the owner of same and the mortgage securing it, and Mrs. Betsa Clark, an acquaintance of Daniel Williams, she having obtained possession of the note and mortgage and claimed to have an

NOTE.—On competency of witness to testify to possession of note, deed, or other articles at one time in possession of the decedent, where witness would be incompetent to testify directly to a transaction by which it is claimed decedent parted with his possession, see note in 45 L.R.A.(N.S.) 583, where a majority of the cases hold that a witness who is incompetent to testify directly to the transaction by which it is claimed decedent parted with his possession is also incompetent to testify as to his possession of an instrument or other property during the lifetime of the decedent, where such evidence is offered for the purpose of establishing a state of facts from which a delivery by the decedent may be inferred.

alleged assignment of the mortgage, the trial court found that Erastus A. Williams was the owner of the note and mortgage, and that the same had never been transferred to Mrs. Betsa Clark; *held* that the findings of the trial court in this regard are sustained by the evidence.

**Wills — introduction of testimony under subdivision 2 of § 7871, C. L. 1913.**

2. Subdivision 2 of § 7871 provides that "in civil action or proceeding by or against executors, administrators, heirs at law, or next of kin in which judgment may be rendered or ordered entered for or against them, neither party shall be allowed to testify against the other as to any transaction whatever with or statement by the testator or intestate, unless called to testify thereto by the opposite party." The court properly prohibited the defendant and her witnesses from giving any testimony violative of the above section.

**Wills — execution and proof of blank assignment and mortgage — evidence as to insertion of name in blank assignment.**

3. Daniel Williams executed an assignment in blank of the mortgage in question. The note, mortgage, and assignment came into the possession of the defendant. The blank assignment became completed in form by the insertion therein of the name "Mrs. Betsa Clark." Defendant claims those words were written in the assignment in the handwriting of Daniel Williams, and adduced testimony to that effect. Plaintiff introduced competent testimony tending to prove that the words "Mrs. Betsa Clark" were not in the handwriting of Daniel Williams, but in that of defendant. The court found there was no transfer of the note, interest coupon notes, or mortgage. That finding is supported by the evidence.

**Pleading — filing amended answer — discretion of court in granting amendment.**

4. Under the circumstances in this case, the refusal of the court to grant permission to file an amended answer at the time of the trial rests upon the principle of whether the amendment should have been allowed in furtherance of justice. In this case, it is clear the granting of the amendment would not have been in the furtherance of justice. The court had the discretion, under the circumstances, to either grant or refuse the amendment. It refused it and in this there was no abuse of discretion.

Opinion filed April 4, 1919.

Appeal from the District Court of Burleigh County, *A. T. Cole,* J. Affirmed.

*Sullivan & Sullivan,* for appellant.

"Judgment in action of claim and delivery must be supported by a verdict of the jury in the absence of a proper waiver." Hart v. Wynd-

mcre, 21 N. D. 383, 131 N. W. 271, Ann. Cas. 1913D, 169; Gorth v. Jarvis, 15 N. D. 509.

"Plaintiff cannot deprive defendant of a jury trial of legal issues by advancing fictitious claims for equitable relief." Davison v. Associates Jersey Co. 71 N. Y. 333; Wheelock v. Lee, 74 N. Y. 504; People v. A. J. S. R. Co. 57 N. Y. 333; Yager v. Exchange Nat. Bank, 72 N. W. 211.

"It is error for the court to substitute itself for a jury without consent or waiver of parties." Yankton F. Ins. Co. v. R. Co. 7 S. D. 428, 64 N. W. 514; 24 Cyc. 110, see cases cited therein. Burleigh v. Hecht (S. D.) 117 N. W. 366.

"The plaintiff having introduced in evidence a negotiable note, properly assigned to her, establishes prima facie her case and the ownership of such documents." Brynjoldson v. Osthus, 12 N. D. 42, 96 N. W. 261.

"Testimony tending to show that the deceased was present at time the defendant received the papers should have been admitted." St. John v. Lofland, 5 N. D. 140, 64 N. W. 930; Cowen v. Lagburn, 116 N. C. 526; Pritchard v. Pritchard, 69 Wis. 373, 34 N. W. 506; (Iowa) 110 N. W. 435; Umstead v. Bowling, 64 S. E. 368; Smith v. Smith, 89 S. E. 1032; Borum v. Bell (Ala.) 31 So. 454; Yoder v. Englebert (Iowa) 136 N. W. 523; Seybold v. Bank, 5 N. D. 460.

*Benton Baker* and *Fisk & Murphy,* for respondent.

"An amendment that materially changes the issues should not be allowed at time of trial." Beauchamp v. Insurance Co. 38 N. D. 499, 165 N. W. 545.

"The note being payable to the deceased, and not having been indorsed by him, the law presumes that same is the property of the estate; and possession of the note by another is insufficient to overcome this presumption." 8 C. J. 386–1006; 1007; 3 R. C. L. p. 981, and cases cited; see note in 50 L.R.A.(N.S.) 582–591; Vastine v. Wilding, 45 Mo. 89, 100 Am. Dec. 347; Escamella v. Pingree (Utah) 141 Pac. 103; Kiefer v. Tolbert (Minn.) 151 N. W. 529; Sheperd v. Hanson, 9 N. D. 249; Swanby v. Payne (Wis.) 137 N. W. 763; Baker v. Warner (S. D.) 92 N. W. 383; Shea v. Doyle, 65 Ill. App. 471.

"At most, defendant can claim only a mere equitable title to the note, the same not having been indorsed by the payee." 7 Cyc. 812–818.

"In this case there was no delivery prior to payee's death, therefore no transfer of title." 7 Cyc. 814, and cases cited, 3 R. C. L. p. 967, § 175.

"It is elementary and well settled that a legal consideration is essential to a valid transfer; there was no consideration for alleged purchase by defendant." 7 Cyc. 815.

"There was no gift either *inter vivos* or *causa mortis.* Delivery is just as essential in case of gift as in case of purchase; there must be a delivery in order to pass title." See 12 R. C. L. 932–937, 941, 957, and cases cited; Comp. Laws, § 5539; Knight v. Tripp (Cal.) 54 Pac. 267; Van Eman v. Stanchfield, 10 Minn. 255; Cavitt v. Tharp, 30 Mo. App. 131; Dorn v. Parson, 56 Mo. 601; Merlin v. Manning, 2 Tex. 351; Ross. v. Smith, 19 Tex. 171; 4 Am. & Eng. Enc. Law, 2d ed. 319; Dan. Neg. Inst. § 812; Rand, Com. Paper, § 792; Escamella v. Pingree (Utah) 141 Pac. 103, citing numerous authorities; see also Comp. Laws, § 3541. As to what constitutes a gift *causa mortis,* see 12 R. C. L. 959, 962, and cases cited; Zeller v. Jordan (Cal.) 38 Pac. 640; Luther v. Hunter, 7 N. D. 544, 75 N. W. 916; Basket v. Hassell, 107 U. S. 602, 27 L. ed. 500.

"Gifts *causa mortis* are not favored, as they are against the policy of the law." Hatch v. Atkinson, 56 Me. 324, 96 Am. Dec. 464; Harris v. Clark, 51 Am. Dec. 352, and note, 3 N. Y. 93; Gano v. Fisk, 43 Ohio St. 462, 54 Am. Rep. 819, 3 N. E. 532; Hall v. Howard, Rice, L. (S. C.) 310, 33 Am. Dec. 115; note in 85 Am. Dec. 638; Gilmore v. Lee, 237 Ill. 402, 127 Am. St. Rep. 330, 86 N. E. 568; Hawn v. Stoler, 208 Pa. 610, 65 L.R.A. 813, 57 Atl. 1115; Willis v. Secor, 31 Mich. 185, 18 Am. Rep. 178.

"Defendant was not competent to testify as to transaction with the deceased." Comp. Laws 1913, § 7871; Regans v. Jones, 14 N. D. 591, 105 N. W. 613; Cardiff v. Marquis, 17 N. D. 110, 114 N. W. 1088; Larson v. Larson, 19 N. D. 160, 23 L.R.A.(N.S.) 849, 121 N. W. 202. See especially Wagenen v. Bonnot, 74 N. J. Eq. 843, 18 L.R.A.(N.S.) 400, 70 Atl. 143; Smith v. Burnet, 35 N. J. Eq. 322; Woolverton v. Van Syckel, 57 N. J. L. 393, 31 Atl. 603; Provost v. Robinson, 58 N. J. L. 222, 33 Atl. 304; Dickerson v. Payne, 66 N. J. L. 35, 48 Atl. 528. See also valuable note to the case of Wall v. Wall, 45 L.R.A.

(N.S.) 583; 20 Cyc. 1232; Schultz v. Becker (Wis.) 110 N. W. 213; Beebe v. Coffee (Cal.) 94 Pac. 766.

"Until the gift is legally perfect and complete, a *locus pœnitentiœ* remains, and the owner may make any other disposition of the property that he or she may think proper." Taylor v. Henry, 48 Md. 557, 30 Am. Rep. 486; Gorman v. Gorman, 87 Md. 338; Pennington v. Gittings, 2 Gill & J. 208; Murray v. Cannon, 41 Md. 476; Dougherty v. Moore, 71 Md. 249; Bunn v. Markham, 7 Taunt. 224; Keepers v. Fidelity Title & D. Co. 56 N. J. L. 393, 23 L.R.A. 184.

GRACE, J. Appeal from the district court of Burleigh county, A. T. Cole, Judge, sitting in the place of Judge Nuessle.

This action is brought by Erastus A. Williams as executor of the estate of Dan Williams, deceased, against one Betsa Clark, to recover possession of a certain promissory note secured by a real estate mortgage upon the following land, to wit: The west one half of the S. E. ¼ and the S. W. ¼ of section 15, and the north one half of the N. E. ¼ and east one half of the N. W. ¼ of section 22, township 142 north of range 81, containing 358 acres more or less according to the United States government survey thereof, owned by Erastus A. Williams, the executor, who is a surviving brother of Dan Williams, and to recover a certain assignment of said mortgage. The further, and in fact real, purpose of the action is to determine title and adverse claims to the note, mortgage, and assignment as between Erastus A. Williams and Betsa Clark, who had obtained possession of the above-described evidence of indebtedness. Erastus A. Williams made, executed, and delivered the note and mortgage in question to his brother, Daniel, at or about the time or date of the same. About the 26th day of October, 1915, in the city of Bismarck, North Dakota, Daniel Williams executed an assignment of such mortgage in blank. The acknowledgment of the assignment was before Benton Baker, Esq., a notary public, and one of the attorneys of record in this action for Erastus A. Williams. Daniel Williams died on or about January 29, 1917, in Bismarck, North Dakota, at the home of his brother, Erastus A. Williams. As one of the exhibits in the case there appears the last will and testament of Daniel Williams. By the terms of the will, Daniel devised and bequeathed to Erastus A. Williams, his brother, all his estate

whether the same be, real or personal property. This will was dated the 20th day of June, 1910, and appears to be properly signed and witnessed. After the execution of the note, mortgage, and assignment, the same came into the possession of Betsa Clark. The assignment of the mortgage executed in blank had become, in form, completed by the insertion therein of the name of "Mrs. Betsa Clark" as assignee, and this gives rise to one of the main questions in the case, namely; Was the name of "Mrs. Betsa Clark" inserted in the assignment by Daniel Williams in his own handwriting, or was it inserted therein by Betsa Clark in her own handwriting? We will discuss this matter more fully later in the opinion. Defendant claims that it was error not to have submitted the questions involved in this suit to a jury on the ground that the complaint stated on its face an action in claim and delivery. The appellant devotes a large portion of his brief to the discussion of her right to trial by jury. The record discloses no demand of the right of trial by jury, and we must assume there was none. The defendant proceeded to try the case to the court as purely a court case, and from its beginning to its close, it was tried as such under the provisions of the Newman Act. From the judgment against defendant in the trial court defendant prosecutes an appeal to this court and demands a trial *de novo*. In addition to this, the prayer of the complaint almost entirely demands equitable relief, and at least a portion of the prayer of the defendant demands equitable relief; and though the prayer does not wholly determine whether the action is one in equity only, it must be taken into consideration to determine if, upon the facts and pleadings of the entire case, the relief to be granted is such that it is rendered in equity rather than in law. The action was not alone for the purpose of determining who was entitled to the possession of the property in question, but was in fact to determine the title and adverse claims respecting it. Assuming, however, that the action is one in which there were legal questions which could be submitted to a jury and also equitable ones which should be decided by the court, the defendant made no demand to have the legal questions, if any, first submitted to and determined by the jury, and at least tacitly consented that all questions of law which might have been properly tried by a jury should be tried to the court. As disclosed by the record, the defendant's entire conduct

denoted that she well understood the action was one in equity, and she tried it to the court upon that theory, and the whole action was tried as an action in equity by both parties. To show this more clearly and especially for the purpose of showing that the defendant consented, in open court, to the trial of the action to the court without a jury, we submit the following: At the very inception of the trial and at the first steps therein, Erastus A. Williams was called to testify by plaintiff's attorney, Mr. Murphy.

Before a single question had been asked of him, Mr. Sullivan, the attorney for the defendant, interposed the following objection:

At this time, the defendant objects to any testimony being taken from this witness, Mr. Erastus A. Williams, on the ground that it is apparent from the complaint that he is the executor of the estate of Dan Williams, deceased, at least it is so alleged, and all such testimony taken from this witness is violative of the terms of subdivision 2, § 7871, of the Compiled Laws of North Dakota for 1913.

The Court: It all goes in under the Newman Act.

Mr. Sullivan: I understand that the objection raised by this statute is prohibitive,—the witness is not permitted to testify.

The Court: That is, as to conversations with the deceased and transactions with the deceased.

Mr. Murphy: That goes to the competency of the witness.

Mr. Sullivan: I understand that, under the prohibitive statute, the court is required to prohibit the witness from testifying.

It will be noticed that at the very threshold of the case, the defendant knew the action was being tried under the Newman Act, and she proceeded to and did try the entire case under the Newman Act without objection. The record as a whole shows it. The remainder of appellant's assignments of error relate to alleged errors of the court in sustaining objections to certain questions asked by defendant, and in excluding the answers thereto and in excluding certain evidence sought to be introduced by her, which was held by the court to be incompetent for the reason that its reception would be in violation of subdivision 2 of § 7871, wherein it is provided: "In civil action or proceeding by or against executors, administrators, heirs at law, or next of kin in which judgment may be rendered or ordered entered for or against them,

42 N. D.—8.

neither party shall be allowed to testify against the other as to any transaction whatever with or statement by the testators or intestate, unless called to testify thereto by the opposite party."

The questions to which the answers were excluded were those asked of the defendant, who was an incompetent witness so far as her testimony or her intended answer to any question propounded to her showed that her testimony or the excluding of the answer related to any transaction with the deceased with reference to the subject-matter of the action. She was prohibited, under the statute, from testifying to any such transaction connected with the subject-matter of the action. Upon a thorough examination of all questions asked of this witness by her counsel, we are satisfied there were no errors in prohibiting her from answering the same, nor in excluding her testimony concerning the matters inquired about, or in prohibiting any other witness from giving testimony of like character; for it is apparent that such questions or answers and testimony of that character, if given, would be violative of the section above referred to. It may be that certain of the questions, upon thorough examination, do not bear this construction, but if not, such questions and answers appear to be immaterial, and it was harmless error to exclude them. The rule of law which excludes such questions, answers, and testimony of that character may seem, and indeed is, a harsh one. However, it must be conceded that the rule is a salutary one and based upon sound public policy, when it is considered the great evil that might result and the loss that might occur to the estates of deceased persons were persons who had transactions with the deceased permitted to testify as to such transaction; and when we take into consideration the fact that the lips of the other party to the transaction are forever sealed, and that but for such law the survivor to the transaction would be free to give his own version of the facts and circumstances connected with the transaction, oftentimes the whole of which would go unchallenged, the necessity for such law becomes apparent. We are quite certain there is no real merit in any of the errors assigned. It might be just as well to close this opinion at this point without any further analysis of the case. It will do no harm, however, to briefly review the merits of the case so that it may more clearly appear that the judgment of the trial court is correct.

One of the principal contentions in the case is that relative to the

filling in of the blank in the assignment with the name of "Mrs. Betsa Clark." Is the name of "Mrs. Betsa Clark" therein written, in the handwriting of Betsa Clark or is it in that of Dan Williams? Defendant testified positively that the words "Mrs. Betsa Clark" in the assignment were in the handwriting of Daniel Williams. She sought to corroborate this testimony by that of one Plummer, a banker of Forest City, Iowa, to whom she had sent the note, mortgage, and assignment after the death of Daniel. Plummer had never seen Dan Williams. He had received two letters from him,—one of the letters having been received two years prior to the time he gave his testimony, and the other in 1916. The last time Plummer saw these letters was in the spring of 1917. He said, in effect, he filed these letters away for safekeeping, but that he had not been able to find them, though he searched everywhere for them, including his desk, safety deposit box, and vault; in other words, made a complete search. With no further acquaintance with the handwriting of Dan Williams other than the receipt of the two letters which have become lost, he was asked to examine certain exhibits of letters, and to state whether the handwriting on the exhibits of letters was the same as the handwriting on the letters which he received. He testified positively that it was. On the strength of the knowledge which he claimed in this regard, exhibit 15, being a letter to Sullivan & Sullivan in answer to one which he had received from them, becomes quite important. With exhibit 15, Plummer inclosed the mortgage and note and the assignment. With reference to the assignment, the letter states, "Also an assignment dated October 26, 1915, from Dan Williams to Mrs. Betsa Clark, same properly signed and acknowledged by Benton Baker, N. P., and witnessed by two witnesses. I know Dan Williams's writing well and he has written in 'Mrs. Betsa Clark' in the assignment himself."

To controvert the testimony of defendant and her witnesses with respect to whose handwriting the words "Mrs. Betsa Clark" is in, the plaintiff introduced several expert witnesses, among whom were E. M. Thompson and J. A. Graham, who were cashiers of banks and who were familiar with the handwriting of Dan Williams. They testified in their opinion the words "Mrs. Betsa Clark" were not in the handwriting of Daniel Williams. F. E. Shepard, who had thirty years' experience as a banker, qualified as an expert in this respect, and, though he was not

familiar with the signature of Dan Williams, testified, in his opinion, the words "Mrs. Betsa Clark" and the admitted signature of Dan Williams to the assignment were in different handwriting.   C. C. Curtis, a noted handwriting expert, one who had been witness in various cases, some of which were quite noted, wherein was inolved the authenticity of handwriting of signatures, examined the various exhibits in the case including letters written by Dan Williams to Mrs. Betsa Clark and her address on the envelops in which such letters were inclosed, which address consisted of the words "Mrs. B. Clark," and also examined the words "Mrs. Betsa Clark" in exhibit 1, and testified that they were not written by the same hand.   He also testified that the words "Betsa Clark" written upon exhibit A, being the mortgage note and the coupons in question, was the same handwriting as that of the words "Mrs. Betsa Clark" in the assignment.   On exhibit A the words "Betsa Clark" were written five times, once upon the main note and once on each of four coupons thereto attached.   In the hearing in the county court Mr. Benton Baker, an attorney at law, appeared as the attorney for the estate of Dan Williams.   At that time, he examined exhibit 1 with reference to the writing "Mrs. Betsa Clark" appearing thereon.   He stated those words appeared fresh and very much lighter in color than the other, ink writing with pen, on the instrument.   To the same effect is the testimony of H. C. Bradley, who was county judge at the time of the proceeding in the county court.   The trial court had all the witnesses before it and had full opportunity of noting the demeanor of the witnesses while on the stand.   It found in favor of the plaintiff to the effect that the note, and interest coupon notes, and the mortgage securing the payment of the same, were never transferred by the decedent to the defendant or to any other person.   This finding means that the words "Mrs. Betsa Clark" were not written in the assignment by Daniel Williams.   There is no testimony showing that he ever authorized anyone else to write his name therein.   It follows from such finding that the defendant acquired no interest in the notes or mortgage by reason of such assignment.   We think the finding is correct.   Testimony of Captain I. P. Baker, one of the witnesses to the assignment, adds strength to plaintiff's claim.   He stated that Dan Williams asked him to witness the assignment, and at that time stated the purpose of it was that "he might want to go down to the Bismarck

bank and get some money, but he was not sure, and for that reason there was no name put on it, and he left it blank. He said he might need some." The note was payable to Dan Williams, and, from all the testimony in the case, we must conclude that it was not indorsed by him. He is in law, therefore, presumed to be the owner at the time of the death. If that be true, the title to the same is in his estate. Such presumption is not overcome by mere naked possession of the note by defendant at the time of said decedent's death. 8 C. J. 386–1006, 1007; 3 R. C. L. 981; Shepard v. Hanson, 9 N. D. 249, 83 N. W. 20; Vastine v. Wilding, 45 Mo. 89, 100 Am. Dec. 347; Kiefer v. Tolbert, 128 Minn. 519, 151 N. W. 529; Baker v. Warner, 16 S. D. 292, 92 N. W. 383.

If the assignment of the mortgage was not made to the defendant, and we hold it was not, and the signatures on exhibit A, the note in question and the coupon notes, were not the signatures of Daniel Williams, and, under the finding of the trial court and the evidence in this case, we hold such signatures were not his, there was no delivery of the note and the coupon notes nor the mortgage; hence there was no transfer. 7 Cyc. 814; 3 R. C. L. 175. There was no consideration for the alleged transfer, and there being no delivery, which there must be in order to pass title, there could have been no gift. The evidence with reference to the gift is not at all convincing, and when it is considered there is no blood relation between the defendant and Dan Williams, the testimony with reference to a gift based merely upon a friendly acquaintance should be scrutinized with great care. It would be in obedience to the natural law and in accord with general experience that one would not dispose of his property in such manner as to prevent those who were entitled to inherit the same, in this case a brother, from receiving the same. It would be in direct opposition to the natural law of esteem, respect, and affection which it must be presumed generally exists between those closely related by the ties of blood, in disposing of property under circumstances similar to those in this case, to prefer a friendly acquaintance to those related by the ties of blood. The transfer of the large amount of property to one who is a stranger in blood and bears no other relation other than that of a friendly acquaintance will be scanned with much particularity to determine whether such a transfer was actually intended or in fact made. If it may be done, the proof

thereof must be clear and convincing. No enmity is shown to have ever existed between Daniel Williams and Erastus A. Williams, and the will, which is an exhibit in this case, declares the latter to be the sole legatee of Daniel Williams. It is only important as tending to show that Daniel Williams intended his property to go to those lawfully entitled under law to receive it, and as tending to establish the fact that he never transferred the note or mortgage. We think, under the circumstances in this case, there is no reversible error nor abuse of discretion by the court in not permitting the defendant to amend her pleadings. The sole defense relied upon by the defendant until the time of the trial was that she had paid a consideration for the note and mortgage. This defense becoming untenable, she then tendered an amended answer in which the main defense sought to be relied upon was that the note and mortgage were a gift to her by Daniel Williams. This defense was entirely different from and inconsistent with the first defense. Though inconsistent, we believe it might have been pleaded together with the defense of good consideration in the original answer.

Under the circumstances in this case, the granting of permission to amend the pleadings by permitting the service and filing of an amended answer or the refusal to permit such to be done, rests upon the principle of whether the amendment should or should not be allowed in furtherance of justice. The court, in this case, disallowed the amendment, and in effect such disallowance means that the amendment was not in furtherance of justice. Kerr v. Grand Forks, 15 N. D. 294, 107 N. W. 197. We do not think in this case there was any error in not permitting the amendment, for it is clear to have done so would not have been in furtherance of justice. There was no abuse of discretion of the trial court, in this case, in refusing to permit the amendment. Under all the evidence, it is clear defendant is not entitled to recover. The $500 check was not really an issue in this case, and we make no decision with reference to it. We are satisfied from the whole record and from what we have said, judgment should be affirmed, and same is affirmed, with statutory costs.

ROBINSON, J., concurs.

BRONSON, J., and COOLEY, District Judge, concur in result.

CHRISTIANSON, Ch. J. (concurring specially). I concur in an affirmance of the judgment. In my opinion the evidence fully supports the findings made by the trial court, and the statement of facts contained in the opinion prepared by Mr. Justice Grace. The record shows that the court did not rule upon objections to evidence, and all evidence offered was received. The court did, however, sustain an objection to the competency of the defendant as a witness to transactions between herself and the deceased, and refused to permit her to testify upon that subject. At the time the ruling was made the record before the trial court clearly showed that the testimony sought to be elicited from the defendant was within the bar of subd. 2, § 7871, Compiled Laws 1913.